

**SO ORDERED.**

**SIGNED this 06 day of July, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **NATIONAL GAS DISTRIBUTORS, LLC** | **06-00166-8-ATS** |
| DEBTOR | |
| | |
| **RICHARD M. HUTSON, II, TRUSTEE** | |
| Plaintiff | **ADVERSARY PROCEEDING NO.** |
| v. | **S-08-00136-8-AP** |
| **GREENVILLE UTILITIES COMMISSION,** **FIRST-CITIZENS BANK & TRUST COMPANY,** and **CORAL ENERGY RESOURCES, LP** | |
| Defendants. | |

**ORDER ALLOWING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The matters before the court are the motion for summary judgment filed by the plaintiff, Richard M. Hutson, II, Trustee for National Gas Distributors, LLC ("NGD"), and the cross-motion for summary judgment filed by the defendant, Coral Energy Resources, LP ("Coral"). A hearing took place in Raleigh, North Carolina on June 29, 2009.

NGD filed a petition for relief under chapter 11 of the Bankruptcy Code on January 20, 2006, and Mr. Hutson was appointed chapter 11 trustee on January 24, 2006. Prior to filing the petition, NGD was in the business of purchasing and distributing natural gas in North Carolina, South Carolina and Tennessee. Greenville Utilities Commission ("GUCO") provides water, sewer, electricity and natural gas to the citizens of Greenville, North Carolina. NGD supplied some or all of GUCO's natural gas requirements from June 2002 through December 2005 pursuant to a Natural Gas Sales Contract effective June 1, 2002, and a Base Contract for the Sale and Purchase of Natural Gas effective September 16, 2005. Coral sold natural gas to NGD pursuant to a Base Contract for Sale and Purchase of Natural Gas dated September 1, 2004.

GUCO owes NGD the sum of $929,474 pursuant to the 2005 contract for gas delivered to GUCO during the month of December 2005. Due to various offsets, credits and reductions totaling $650,731.26, there is an outstanding receivable from GUCO in the amount of $288,742.74. First-Citizens Bank & Trust Company holds a first priority security interest in NGD's accounts receivable, and it maintains that it holds an interest superior to all other interests in the GUCO receivable. Coral maintains that it has a superior claim to the GUCO receivable as a result of a Direction to Pay executed by NGD, Coral, and GUCO on August 1, 2004.

The trustee brought this action to determine the extent, validity and relative priority of the claims of Coral and First Citizens with respect to the GUCO receivable, and now seeks summary judgment determining that the interest of First Citizens has priority over any interest of Coral or the trustee in the receivable. Coral opposes the trustee's motion for summary judgment, and instead seeks summary judgment determining that the GUCO receivable is not property of the estate, and that the receivable is not subject to First Citizens' security interest.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(K), which this court may hear and determine.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy." Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

NGD and GUCO entered a contract dated June 1, 2002, entitled "Natural Gas Sales Contract." The contract identified NGD as the "Seller" and GUCO as the "Buyer" and provided that "[t]he Seller shall render an invoice to Buyer each month reflecting the aggregate of quantities delivered . . . . The Buyer will pay the invoiced amount . . . . All payments shall be made by check

3

or such other mutually agreed payment method between Seller and Buyer." Miller Aff., Ex. 1 at ¶ 10. The contract also provided a mailing address and wiring instructions for payments to NGD. Id. at ¶ 20.

NGD and GUCO entered a contract dated September 16, 2005, entitled "Base Contract for Sale and Purchase of Natural Gas." The 2005 contract provided for payments by wire transfer to NGD. Miller Aff., Ex. 2, p.1 § 7.2. NGD provided natural gas to GUCO during the month of December 2005, for which GUCO did not pay. Absent any other document or agreement, the funds owing for the December 2005 gas deliveries are an account receivable of NGD, owed by GUCO. There is no dispute that First Citizens holds a first priority security interest in all of NGD's accounts receivable, and that its security interest is superior to any interest the trustee has in accounts receivable.

GUCO, NGD and Coral executed a document entitled "Direction to Pay" on August 1, 2004, which provided, in relevant part,

> B. NGD has agreed with Coral to direct to Coral all payments which NGD is entitled to receive from [GUCO] in respect of sales of natural gas and any ancillary services to [GUCO] under the [Natural Gas Sales] Agreement.
>
> NOW THEREFORE, NGD hereby directs [GUCO] to make the funds, otherwise payable to NGD under the [Natural Gas Sales] Agreement, payable to Coral Energy Resources, L.P.
>
> \* \* \*
>
> This Direction to Pay shall remain in force until receipt by [GUCO] of a written revocation of this Direction to Pay executed by Coral and NGD. In the event of a dispute between Coral and NGD, NGD hereby directs [GUCO] to follow the terms of this Direction to Pay until such time as NGD and Coral jointly advise in writing of alternative arrangements.

Miller Aff., Ex. 3. During the course of the relationship between NGD and GUCO, both before and after the execution of the Direction to Pay, NGD indicated on its invoices to GUCO whether the

payment should be remitted to NGD, Conoco, or Coral. Miller Aff., ¶ 8. Invoices issued for the delivery of natural gas pursuant to the 2005 Base Contract between GUCO and NGD all indicated that payment should be made to NGD, and with the exception of the unpaid December 2005 invoice, GUCO remitted all payments to NGD. Miller Aff., ¶ 9; Miller Aff., Ex. 4. At no time did Coral contact GUCO requesting payment from GUCO for the gas delivered by NGD. Miller Aff., ¶ 10.

After the Direction to Pay was executed, NGD and Coral entered a contract dated September 1, 2004, entitled "Base Contract for Sale and Purchase of Natural Gas." Coral Proof of Claim, Ex. A. Pursuant to that contract, Coral sold natural gas to NGD, which NGD in turn sold to its customers. That contract included a credit support addendum requiring NGD to provide an initial letter of credit in the amount of $1,000,000 to secure its payment obligations to Coral.

Coral maintains that the Direction to Pay created a principal-agency relationship between Coral and NGD, and, consequently, Coral owned the funds payable by GUCO for the gas GUCO received from NGD. By extension, Coral argues, the receivable is not property of the estate, and First Citizens does not have a security interest in the receivable. The trustee contends that the Direction to Pay created at most a security interest in the receivable, and because it was entered after First Citizens' security interest in accounts receivable was perfected, that security interest is subordinate to the claim of First Citizens.

"A principal-agent relationship arises upon two essential elements: '(1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent.'" Harrold v. Dowd, 149 N.C. App. 777, 785, 561 S.E.2d 914, 920 (2002) (citation omitted). There is nothing in the documents granting NGD authority to act for Coral; in fact, NGD had an established relationship with GUCO as its natural gas distributor prior to NGD's entering a contract

5

with Coral, and the only thing that changed between GUCO and NGD when NGD entered its agreement with Coral was that the three parties executed the Direction to Pay.[1]

Similarly, there is no evidence that Coral exercised any control over NGD. The contract between Coral and NGD is clearly a contract for sale, creating a debtor-creditor relationship. Under that contract, Coral agreed to "sell and deliver" and NGD agreed to "receive and purchase" natural gas; title to the gas transferred to NGD upon delivery; and liabilities with respect to the gas after delivery were the responsibility of NGD. Coral Proof of Claim, Ex. A, §§ 3.1, 8.1. Likewise, the contracts between NGD and GUCO showed that the debtor had control over the gas once it was sold to it by Coral.

Coral contends that the parties did not intend for NGD to take possession of or title to GUCO's receivables, Long Aff., ¶ 7, but the clear language of the documents contradicts this. The Direction to Pay itself refers to "all payments which NGD *is entitled to receive* from [GUCO]" and "the funds, *otherwise payable to NGD* " Miller Aff., Ex. 3 (emphasis added). Finally, Coral's proof of claim filed in the NGD chapter 11 case states that the basis for its claim is "goods sold" to NGD pursuant to the contract for sale, not claims arising from the breach of an agency relationship.

Taken together, there is nothing in the documents to support Coral's assertion that the relationship between it and NGD was one of principal and agent. The only evidence that would support this position is the lone statement in the Long affidavit that "[t]he parties did not intend for NGD to take possession of or title to Greenville's receivables. This intent is evidenced in the Direction to Pay." Long Aff., ¶ 7. The clear language of the Direction to Pay, however, shows that

---

[1] The Miller Affidavit demonstrates that the actual method of invoicing and payment did not change, except that there became three instead of two entities whom NGD could designate as payees for each invoice.

6

the parties acknowledged the funds were "otherwise payable" to NGD. Coral maintains that it has established some evidence that its interpretation of the relationship is correct, and therefore summary judgment cannot be granted in favor of the trustee. Contrary to Coral's argument, this one statement in the affidavit is not sufficient to defeat summary judgment on this point. First, where the contracts are clear, parol evidence is inadmissible to demonstrate the parties' intent. To create a triable issue of fact, the evidence must be admissible. Fed. R. Civ. P. 56(e)(1); Fed. R. Bankr. P. 7056. Second, a party cannot create its own triable issue of fact by submitting an affidavit in conflict with its own evidence. 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[1][f] (3d ed. 2009). The contracts and the proof of claim establish that the relationship between NGD and Coral was one of buyer and seller, debtor and creditor, and not agent and principal. Accordingly, there is no disputed issue of material fact remaining for trial with respect to the agency argument, and summary judgment will be allowed in favor of the trustee.

Having determined that the Direction to Pay did not establish a principal-agent relationship between NGD and Coral, and thus did not create an ownership interest in the GUCO receivable in favor of Coral, the court must determine what interest the Direction to Pay did create for Coral. The trustee maintains that the Direction to Pay creates a security interest pursuant to Article 9 of the Uniform Commercial Code as adopted by North Carolina. Coral denies that it is a security interest, contending that there is no language in the Direction to Pay granting a security interest, while there is a separate security agreement attached to the base contract between NGD and Coral.

The court agrees with the trustee that a security interest in the GUCO receivable was created by the Direction to Pay. North Carolina General Statute § 25-9-102(a)(2) defines "account" as including "a right to payment of a monetary obligation . . . for property that has been or is to be sold

. . . ." As the court concluded through its review of the various contracts, above, the GUCO receivable is a right to payment arising out of the sale of natural gas by NGD to GUCO. The trustee maintains that the following facts suggest that Coral had the debtor execute the Direction to Pay as security for its obligations to Coral under the Base Contract for Sale and Purchase of Natural Gas dated September 1, 2004:

> The language of the Direction to Pay, which references the contract that created the obligation of NGD to Coral;
>
> The fact that the Direction to Pay was executed before the Base Contract for Sale and Purchase of Natural Gas dated September 1, 2004, and before any gas was transferred from Coral to NGD;
>
> The fact that NGD, through its invoices, continued to control the party to whom payment was remitted after the execution of the Direction to Pay;
>
> The fact that GUCO did not remit payment to Coral every month after executing the Direction to Pay; and
>
> The fact that the transfer of the GUCO receivable to Coral did not reduce the amount of the debt owed by NGD to Coral, as evidenced by the proof of claim filed by Coral.

See generally, Memo. in Support of Trustee's Mot. for Summary Judgment at 11.

Coral failed to perfect its security interest in the receivable, and, though First Citizens' lien was on record, failed to negotiate a subordination agreement with First Citizens. Because Coral's security interest was unperfected on the petition date, both the trustee's and Coral's interest in the GUCO receivable are subordinate to the properly perfected security interest held by First Citizens. N.C. Gen. Stat. § 25-9-322.

In conclusion, there are no triable issues of fact that would support Coral's assertions that the GUCO receivable is not property of the debtor's estate and is not subject to First Citizens' first priority security interest in NGD's accounts receivable, nor are there triable issues of fact that

contradict the trustee's position that Coral held an unperfected security interest in the GUCO receivable that is subordinate to First Citizens' lien. Accordingly, the trustee's motion for summary judgment is **ALLOWED**, and Coral's cross-motion for summary judgment is **DENIED**. A separate judgment will be entered accordingly.

**SO ORDERED.**

**END OF DOCUMENT**